ADAM BRAVERMAN (SBN 244202)
ABraverman@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA 92130
Telephone: 858-720-5100
Facsimile: 858-720-5125

CHRISTIN HILL (SBN 247522)
CHill@mofo.com
ANISSA CHITOUR (SBN 341926)
AChitour@mofo.com
CHLOE CONNOLLY (SBN 348962)
CConnolly@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

*Attorneys for Defendants Block, Inc., Jack Dorsey, Roelof Botha, Sharon Rothstein, Mary Meeker, Randall Garutti, James McKelvey, Shawn "Jay-Z" Carter, Amy Brooks, and Paul Deighton.*

*Additional counsel on next page*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODY WATT, | Case No. 3:24-cv-00867-LL-DDL |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT THEREOF** |
| v. | |
| BLOCK, INC., JACK DORSEY, ROELOF BOTHA, SHARON ROTHSTEIN, MARY MEEKER, RANDALL GARUTTI, JAMES MCKELVEY, SHAWN "JAY-Z" CARTER, AMY BROOKS, and PAUL DEIGHTON, | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| Defendants. | Date:  August 23, 2024 |
| | Ctrm:  5D |
| | Judge: Hon. Linda Lopez |
| | Trial Date: None set |
| | Demand for Jury Trial |

1    ERIK J. OLSON (SBN 175815)
    EJOlson@mofo.com
2    MORRISON & FOERSTER LLP
    755 Page Mill Road
3    Palo Alto, CA 94304
    Telephone: 650-813-5600
4    Facsimile:  650-494-0792

5    *Attorneys for Defendants Block, Inc.,*
    *Jack Dorsey, Roelof Botha, Sharon*
6    *Rothstein, Mary Meeker, Randall*
    *Garutti, James McKelvey, Shawn*
7    *"Jay-Z" Carter, Amy Brooks, and*
    *Paul Deighton.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE COUNSEL OF RECORD: PLEASE TAKE NOTICE that on August 23, 2024, or as soon thereafter as the matter may be heard in Courtroom 5D, before the Honorable Linda Lopez, Defendants Block, Inc. ("Block" or the "Company"), Jack Dorsey, Roelof Botha, Sharon Rothstein, Mary Meeker, Randall Garutti, James McKelvey, Shawn "Jay-Z" Carter, Amy Brooks, and Paul Deighton (collectively, "Defendants") will and hereby do move the Court to dismiss Plaintiff Jody Watt's Complaint with prejudice.

This Motion is made following the conference of counsel that took place on June 7, 2024.

As set forth in the accompanying Memorandum of Points and Authorities, this Court should dismiss the Complaint with prejudice.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, Defendants' Request for Judicial Notice, the Declaration of Christin Hill ("Hill Decl.") and exhibits attached thereto, and all records, pleadings and files herein, and any other matters that the Court deems appropriate.

Dated: July 19, 2024                    MORRISON & FOERSTER LLP


                                        By: */s/ Christin Hill*
                                            Christin Hill

                                        Attorney for Defendants

1
2

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  BACKGROUND ...................................................................................... 2

III.  ARGUMENT ............................................................................................ 4

    A.  Plaintiff Must Satisfy Heightened Pleading Standards to State a Section 14(a) Claim .......................................................................... 4

    B.  Plaintiff Fails to Plead a Material Misstatement or Omission ............. 5

        1.  Plaintiff Does Not Adequately Allege a Material Misstatement ........................................................................... 5

        2.  Plaintiff Does Not Adequately Allege a Material Omission .................................................................................. 9

    C.  Plaintiff Fails to Plead Particularized Facts Giving Rise to a "Strong Inference" of Negligence ...................................................... 12

    D.  Plaintiff Fails to Plead Loss Causation .............................................. 15

IV.  CONCLUSION ...................................................................................... 16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
6

*Bailey v. Zendesk, Inc.*,
   No. 23-cv-1243-PCP, 2024 WL 1807943 (N.D. Cal. Apr. 24, 2024) .............. 15

7
8

*Barnes v. Edison Int'l*,
   No. 18-cv-9690 CBM, 2021 WL 2325060 (C.D. Cal. Apr. 27,
   2021) ................................................................................................................. 8

9
10

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ................................................................... 9, 10

11
12

*City of Birmingham Relief & Ret. Sys. v. Hastings*,
   No. 18-cv-2107-BLF, 2019 WL 3815722 (N.D. Cal. Feb. 13, 2019)............... 14

13
14

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ............................................................................ 8

15
16
17

*In re Daou Sys., Inc., Sec. Litig.*,
   No. 98-cv-1537-L(CGA), 2002 U.S. Dist. LEXIS 27825 (S.D. Cal.
   Mar. 26, 2002) .................................................................................................... 6

18

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ........................................................................... 4

19
20
21

*In re Diamond Foods, Inc. Derivative Litig.*,
   No. 11-cv-5692 WHA, 2012 WL 1945814 (N.D. Cal. May 29,
   2012) ................................................................................................................. 16

22
23

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .......................................................................................... 15

24
25

*In re En Pointe Techs., Inc. Sec. Litig.*,
   No. 01-cv-0205-L(JAH), 2003 WL 27392762 (S.D. Cal. Aug. 25,
   2003) ................................................................................................................... 9

26
27

*In re HP Derivative Litig.*,
   No. 10-cv-3608 EJD, 2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) .............. 16

28

ii

*Hubner v. Mayer*,
No. 15-cv-2965 MWF, 2015 WL 12513581 (C.D. Cal. June 8,
2015) ................................................................................................................. 16

*Hun v. Hajjar*,
No. 18-cv-10330 PSG, 2019 WL 4509302 (C.D. Cal. May 30,
2019) ................................................................................................................... 9

*Ikeda v. Baidu, Inc.*,
No. 20-cv-2768-LHK, 2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) ............ 8, 12

*In re JPMorgan Chase Derivative Litig.*,
No. 13-cv-2414-KJM-EFB, 2014 WL 5430487 (E.D. Cal. Oct. 24,
2014) ................................................................................................................. 14

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ...................................................................... 4

*Krieger v. Atheros Commc'ns, Inc.*,
No. 11-cv-0640-LHK, 2012 WL 1933559 (N.D. Cal. May 29,
2012) ................................................................................................................. 15

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
No. 06-cv-1377 ADM/AJB, 2007 WL 541677 (D. Minn. Feb. 16,
2007) ................................................................................................................. 15

*Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ............................................................. 6

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ........................................................................................... 9

*Mauss v. NuVasive, Inc.*,
No. 13-cv-2005 JM (JLB), 2014 WL 4161431 (S.D. Cal. Aug. 19,
2014) ................................................................................................................... 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000)................................................. 4, 5, 12, 14

*Mehedi v. View, Inc.*,
No. 21-cv-6374-BLF, 2023 WL 3592098 (N.D. Cal. May 22, 2023) ........... 4, 12

*Mehedi v. View, Inc.*,
No. 21-cv-6374-BLF, 2024 WL 3236706 (N.D. Cal. June 28, 2024) ......... 10, 13

*Mendoza v. HF Foods Grp., Inc.*,
  No. 20-cv-2929-ODQ, 2021 WL 3772850 (C.D. Cal. Aug. 25,
  2021) ................................................................................................ 13, 14

*Nathanson v. Polycom, Inc.*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015) ..................................................... 8

*Neborksy v. Valley Forge Composite Techs., Inc.*,
  No. 13-cv-2307-MMA (BGS), 2014 WL 1705522 (S.D. Cal. Apr.
  28, 2014) ................................................................................................ 5

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ................................................................. 7

*Osher v. JNI Corp.*,
  256 F. Supp. 2d 1144 (S.D. Cal. 2003) .............................................. 5, 6

*In re PayPal Holdings, Inc. S'holder Derivative Litig.*,
  No. 17-cv-0162-RS, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .............. 10, 16

*In re Peregrine Sys., Inc. Sec. Litig.*,
  No. 02-cv-0870-BEN (RBB), 2005 WL 8158825 (S.D. Cal. Mar.
  30, 2005) .............................................................................................. 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ............................................................... 9

*Primo v. Pac. Biosciences of Cal., Inc.*,
  940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................. 7

*Ret. Sys. v. Jobs*,
  593 F.3d 1018 (9th Cir. 2010) ..................................................... 4, 15, 16

*Retail Wholesale & Dep't Store Union Local 388 Ret. Fund v.
  Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ............................................................. 10

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................. 12

*In re Sequenom, Inc. S'holder Litig.*,
  No. 16-cv-2054-JAH-DDL, 2023 WL 4833465 (S.D. Cal. July 27,
  2023) ................................................................................................ 9, 11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
   160 F. Supp. 2d 1059 (N.D. Cal. 2001)..............................................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ....................................................................................13, 14

*In re Textainer P'ship Sec. Litig.*,
   No. 05-cv-0969 MMC, 2005 WL 3801596 (N.D. Cal. Dec. 12,
   2005) ...................................................................................................................9

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ...........................................................................................9

*Veal v. Lendingclub Corp.*,
   No. 18-cv-2599-BLF, 2020 WL 3128909 (N.D. Cal. June 12, 2020) ................8

*In re Verisign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007).......................................................12, 13

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998)..................................................................7

**Statutes**

15 U.S.C. § 78u .........................................................................................................5, 15

15 U.S.C. § 78n...................................................................................................*passim*

Private Securities Litigation Reform Act of 1995.............................................*passim*

1

## GLOSSARY

| Term | Definition |
|---|---|
| ¶ | Paragraphs within the Complaint |
| 2023 Proxy Statement | Definitive Proxy Statement to Security Holders, filed with the Securities Exchange Commission on April 28, 2023 by Block, Inc. |
| 2024 Annual Report | Annual Report to Security Holders, filed with the Securities Exchange Commission on April 26, 2024 by Block, Inc. |
| 2024 Proxy | Definitive Proxy Statement and Annual Report to Security Holders, filed with the Securities Exchange Commission on April 26, 2024 by Block, Inc. |
| 2024 Proxy Statement | Definitive Proxy Statement to Security Holders, filed with the Securities Exchange Commission on April 26, 2024 by Block, Inc. |
| Block or the Company | Block, Inc. |
| Board | Block, Inc.'s Board of Directors |
| Compl. | Operative Complaint |
| Defendants | Block, Inc., Jack Dorsey, Roelof Botha, Sharon Rothstein, Mary Meeker, Randall Garutti, James McKelvey, Shawn "Jay-Z" Carter, Amy Brooks, and Paul Deighton |
| Ex. | Exhibit attached to the Declaration of Christin Hill in Support of Defendants' Motion to Dismiss |
| Exchange Act | Securities Exchange Act of 1934 |
| Hill Decl. | Declaration of Christin Hill in Support of Defendants' Motion to Dismiss |
| Individual Defendants | Jack Dorsey, Roelof Botha, Sharon Rothstein, Mary Meeker, Randall Garutti, James McKelvey, Shawn "Jay-Z" Carter, Amy Brooks, and Paul Deighton |
| June 2024 8-K Report | Form 8-K Report to Security Holders, filed with the Securities Exchange Commission on June 21, 2024 by Block, Inc. |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| SEC | Securities Exchange Commission |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1         **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3        This is an action seeking extraordinary relief—to have this Court invalidate

4 the votes of Block's stockholders—on the basis of facially deficient allegations

5 brought by one stockholder.  Plaintiff initially sought to enjoin Block's annual

6 stockholder meeting based on alleged misstatements in Block's proxy materials.

7 This Court properly denied Plaintiff's request, finding that such an injunction was

8 not warranted.  (*See* ECF No. 18, at 7.)  Undeterred, Plaintiff presses forward,

9 seeking to unwind the results of that meeting—a meeting where, with full

10 knowledge of this lawsuit, Block's stockholders overwhelmingly supported

11 management's proposals.

12        Specifically, Plaintiff alleges that Block and its Board of Directors violated

13 Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") by

14 filing a proxy statement that contains material misstatements and omissions

15 concerning the Company's internal controls and the departure of one of its

16 directors.  But Plaintiff's Complaint fails to meet even the most basic pleading

17 requirements of the Federal Rules of Civil Procedure, let alone the heightened

18 demands of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),

19 which governs Plaintiff's sole cause of action.  The Complaint should be dismissed

20 with prejudice for three independent reasons.

21        ***First***, the Complaint fails to allege that Defendants made any false or

22 misleading statement.  The Complaint fails to even identify which specific

23 statements Plaintiff seeks to challenge.  What's more, the handful of statements

24 mentioned in the Complaint are either commitments to corporate policies or

25 opinions regarding the Company's efforts, and as such, are not actionable as a

26 matter of law.  Nor does the Complaint adequately allege that any omitted

27 information would have altered the total mix of information that a reasonable

28 stockholder would have considered in deciding how to cast their proxy vote at the

1    annual stockholder meeting.

2    **Second**, Plaintiff fails to plead particularized facts supporting a "strong

3    inference" of negligence on the part of any Defendant, an independent ground for

4    dismissal.  Plaintiff fails to plead any facts whatsoever concerning any of the

5    Individual Defendants—many of whom are neither officers of Block nor members

6    of its Audit and Risk Committee.

7    **Finally**, Plaintiff fails to plead the required element of loss causation—that

8    the alleged misstatements or omissions caused any economic loss to Plaintiff.

9    Plaintiff does not even attempt to link a purported misstatement or omission in the

10   2024 Proxy to any purported economic damages, much less allege facts establishing

11   any nonspeculative harm, as required under the PSLRA.

12   For all of these reasons, the Complaint should be dismissed in its entirety.

13   **II.    BACKGROUND**

14   On April 26, 2024, Block filed with the Securities Exchange Commission

15   ("SEC"), and disseminated to its stockholders, a Definitive Proxy Statement and

16   Annual Report to Security Holders (together the "2024 Proxy") (attached hereto as

17   Exs. 1 and 2, respectively, to the Declaration of Christin Hill in Support of

18   Defendants' Motion to Dismiss (the "Hill Decl.")).  The 2024 Proxy presented three

19   non-controversial proposals for a vote at the Company's June 18, 2024 annual

20   stockholder meeting: (1) re-election of two unopposed directors; (2) advisory

21   approval of named executive officers' compensation; and (3) ratification of Ernst &

22   Young LLP's appointment as Block's independent registered accounting firm for

23   the 2024 fiscal year.  (Ex. 1 at 5.)

24   On May 16, 2024, about three weeks after the 2024 Proxy was issued,

25   Plaintiff filed the instant action against Block and members of its Board of

26   Directors (the "Board").  (ECF No. 1 ("Compl.").)  The Complaint alleges the 2024

27   Proxy was "false and misleading and contain[ed] material omissions" in violation

28   of Section 14(a) of the Exchange Act.  (Compl. ¶ 12.)  The Complaint does not

specify which statements are purportedly misleading, as discussed *infra*.  Instead, it expresses two general concerns.  First, the Complaint alleges the 2024 Proxy failed to disclose the existence of "material deficiencies in the Company's internal controls over risks plaguing Cash App," one of Block's products.  (*Id.* ¶¶ 12, 24.)  Second, it alleges the 2024 Proxy failed to disclose "material facts about the sudden and unexpected resignation of Director [Larry] Summers from the Board of Directors."  (*Id.* ¶ 13.)  The Complaint does not allege how the proposals set for vote at the stockholder meeting relate to Cash App's internal controls or Mr. Summers's role with the Company.  (Ex. 1 at 24-26.)

The Complaint seeks to enjoin Block's 2024 annual stockholder meeting or, alternatively, invalidate the stockholders' vote and require another meeting after Block has issued a new proxy.  (*See* Compl. ¶¶ 78, 84, 86-87, Prayer for Relief.)  On May 23, 2024, a week after filing the Complaint, Plaintiff moved to preliminarily enjoin Block's annual stockholder meeting until the Company made additional, unspecified disclosures.  (ECF No. 4.)  Plaintiff filed a corresponding motion for expedited discovery (ECF No. 5), and a motion for expedited briefing on the discovery and preliminary injunction motions (ECF No. 6).

On June 4, 2024, the Court denied Plaintiff's request for a preliminary injunction for failure to demonstrate irreparable harm, explaining that "the vote here does not involve significant changes to Block's corporate governance[.]" (ECF No. 18 at 5, 7.)  The Court also denied as moot the corresponding motions for expedited discovery and expedited briefing.  (*Id.* at 7.)  Despite this rejection, Plaintiff presses on with a request for injunctive relief.

Block ultimately held its annual stockholder meeting on June 18, 2024, as scheduled, rendering the injunctive relief requested by the Complaint moot in part.  (Ex. 4.)  Consistent with the Board's recommendations, the stockholders approved all three proposals at the annual meeting—by considerable margins.  (*Id.* at 297.)  Yet, the Complaint seeks to invalidate the stockholders' vote and hold another

1  meeting after requiring Block to issue a new Proxy.  (*See* Compl. ¶¶ 78, 84, 86-87,

2  Prayer for Relief.)

3  ## III.   ARGUMENT

4  The Complaint should be dismissed because it fails to meet the heightened

5  pleading standards applicable to Section 14(a) claims, which require pleading

6  particularized facts showing: (i) a material misstatement or omission, (ii) a strong

7  inference of negligence, and (iii) loss causation.

8  ### A.   Plaintiff Must Satisfy Heightened Pleading Standards to State a Section 14(a) Claim

9

10  To state a claim under Section 14(a), a plaintiff must plead facts sufficient to

11  demonstrate that "(1) a proxy statement contained a material misrepresentation or

12  omission [falsity] which (2) caused the plaintiff injury and (3) that the proxy

13  solicitation itself, rather than the particular defect in the solicitation materials, was

14  an essential link in the accomplishment of the transaction."  *N.Y.C. Emps.' Ret. Sys.*

15  *v. Jobs* ("*NYCERS*"), 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled in part, on*

16  *unrelated grounds, by Lacey v. Maricopa Cnty*., 693 F.3d 896, 925 (9th Cir. 2012).

17  Furthermore, a Section 14(a) plaintiff must "demonstrate that the misstatement or

18  omission was made with the requisite level of culpability[.]"  *Desaigoudar v.*

19  *Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  District courts within the Ninth

20  Circuit generally hold that the requisite level of culpability for Section 14(a) is

21  negligence.  *See Mehedi v. View, Inc.* ("*Mehedi I*"), No. 21-cv-6374-BLF, 2023 WL

22  3592098, at *13 (N.D. Cal. May 22, 2023); *see also In re McKesson HBOC, Inc.*

23  *Sec. Litig.* ("*McKesson*"), 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000).

24  Section 14(a) claims are also subject to the "heightened pleading standards of

25  the PSLRA, as well as its loss causation requirement."  *NYCERS*, 593 F.3d at 1022;

26  *see also Knollenberg v. Harmonic, Inc*., 152 F. App'x 674, 682 (9th Cir. 2005).  To

27  plead falsity under the PSLRA, the complaint must "specify each statement alleged

28  to have been misleading" and explain "the reason or reasons why the statement is

misleading[.]"  15 U.S.C. § 78u–4(b)(1)(B).  The PSLRA also requires a Section 14(a) plaintiff to "plead with particularity facts that give rise to a strong inference of negligence."  *McKesson*, 126 F. Supp. 2d at 1267.

Plaintiff has not pled facts to support any element of her claim.

### B.    Plaintiff Fails to Plead a Material Misstatement or Omission

The Court should dismiss the Complaint for failure to allege that the 2024 Proxy contained any material misstatement or omission.

### 1.    Plaintiff Does Not Adequately Allege a Material Misstatement

Under the PSLRA, the Complaint must (1) "specify each statement alleged to have been misleading" and (2) provide "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u–4(b)(1)(B).  Plaintiff's "puzzle pleading" fails both requirements.  *Neborksy v. Valley Forge Composite Techs., Inc.*, No. 13-cv-2307-MMA (BGS), 2014 WL 1705522, at *5 (S.D. Cal. Apr. 28, 2014) ("In the context of securities fraud, the term 'puzzle pleading' refers to a pleading that requires a defendant and the court to 'match up' the statements that form the basis of the plaintiff's claims with the reasons why those statements are misleading.").

As for the first requirement, the Complaint's structure (or lack thereof) makes it impossible to even identify which portions of the 2024 Proxy are alleged to be misleading.  The Complaint quotes the 2024 Proxy wholesale without *any* indication of whether Plaintiff agrees or disagrees with the selected quotes.  (*See, e.g.*, Compl. ¶¶ 47-50 (quoting the 2024 Proxy without further explanation).)  For example, paragraph 48 quotes the board leadership structure section without further explanation.  Likewise, paragraph 50 consists of a fifteen-line block quote describing Block's enterprise risk assessment program, again without identifying which portions Plaintiff deems to be misleading.  Such a structure improperly leaves Defendants and the Court "to speculate which portions of the block-quote passages are alleged to be false or misleading."  *Osher v. JNI Corp.*, 256 F. Supp.

2d 1144, 1153 (S.D. Cal. 2003) (dismissing complaint on this basis).

Courts within the Ninth Circuit routinely dismiss securities complaints for failure to specifically identify the alleged misstatements. *See id.*; *see also Mauss v. NuVasive, Inc.*, No. 13-cv-2005 JM (JLB), 2014 WL 4161431, at *7 (S.D. Cal. Aug. 19, 2014) (dismissing complaint where it was "unclear from the structure of the [complaint] whether Plaintiff challenges every aspect of the referenced documents as false or simply challenges certain statements made in those documents"); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (dismissing complaint when "exceedingly difficult to discern precisely which statements are alleged to be misleading"). This same rationale applies equally here.

As for the second requirement, the Complaint also fails to "match up" any statements with "the reasons why those statements are misleading." *Mauss*, 2014 WL 4161431, at *6 (quoting *Neborsky*, 2014 WL 1705522, at *5). Courts frequently dismiss complaints for "puzzle pleading" when they leave it to the court and defendant to "sort out the alleged misrepresentations and match them with the corresponding adverse facts." *In re Daou Sys., Inc., Sec. Litig.*, No. 98-cv-1537-L(CGA), 2002 U.S. Dist. LEXIS 27825, at *28 (S.D. Cal. Mar. 26, 2002); *see also Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1274 (N.D. Cal. 2019) (dismissing for "puzzle pleading" when the court could not "discern which specific statements Plaintiff contend[ed] to be false or misleading").

Here, the Complaint section titled, "Reasons Why the 2024 Proxy Is False and Misleading" does not explain why even a ***single statement*** from the 2024 Proxy is misleading. (*See* Compl. ¶¶ 55-73.) Nor are any of Plaintiff's quotes from

the 2024 Proxy[1] accompanied by an explanation of why any portion of those statements is false or misleading.  These deficiencies warrant dismissal: "neither the Court nor opposing counsel should be required to expend time and effort searching through large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a mélange."  *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243-44 (N.D. Cal. 1998); *see also, e.g.*, *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013) (dismissing complaint which "fail[ed] to connect" "alleged omissions or misstatements" with "any particular statements made" by defendants); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 841-42, 845 (N.D. Cal. 2000) (dismissing when complaint highlighted statements from various documents but failed "to specify each statement alleged to have been misleading").

Even if Plaintiff's failure to comply with the pleading requirements is ignored, the potential misrepresentations identified in the Complaint are no more than aspirational or vague statements of corporate optimism, incapable of objective verification, and are therefore non-actionable as a matter of Ninth Circuit law.  As is well-established in the Ninth Circuit, a statement cannot constitute a material misrepresentation if it is not "capable of objective verification" or does not provide something "concrete upon which a plaintiff could reasonably rely."  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).  "Vague statements of opinion are not actionable under the federal securities laws because they are considered immaterial and discounted by the market as mere 'puffing.'"  *Wenger*, 2 F. Supp. 2d at 1245 (citation omitted).  "When valuing corporations,

_____

[1] Notably, several of the block quotes are actually excerpts from Block's 2023 Proxy Statement, which the Complaint mistakenly attributes to the 2024 Proxy.  For example, compare Compl. ¶ 9, to Ex. 1 at 17 and Ex. 3 at 242.

investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers.  This mildly optimistic, subjective assessment hardly amounts to a securities violation."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010).

The Complaint alleges, for example, that the 2024 Proxy misrepresents that Block's Board "recognizes the oversight of risk management as one of its primary responsibilities," (Compl. ¶ 50), and that the "management team and . . . compensation committee each play a role in evaluating and mitigating any risk that may exist relating to [Block's] compensation programs, policies and practices[.]" (*Id.* ¶ 17.)  These paragraphs of the Complaint are not even in the 2024 Proxy; they are in the 2023 Proxy.  (*Compare* Compl. ¶¶ 17, 50, *with* Ex. 1 at 17, 39 and Ex. 3 at 242, 267.)  Even setting aside the inaccurate cites, these are aspirational, non-descriptive statements of intent that are not actionable under Ninth Circuit law. *See, e.g.*, *Barnes v. Edison Int'l*, No. 18-cv-9690 CBM, 2021 WL 2325060, at *9 (C.D. Cal. Apr. 27, 2021), *aff'd*, No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022) (holding that references to a "focus" on or "commitment" to "safety, infrastructure investment, or mitigation of . . . risks" are not actionable); *Veal v. Lendingclub Corp.*, No. 18-cv-2599-BLF, 2020 WL 3128909, at *12 (N.D. Cal. June 12, 2020) (dismissing complaint as to statement about company's "relentless focus on compliance, security and risk management"); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 976-77 (N.D. Cal. 2015) (holding that statements discussing commitment to ethical practices are "inherently aspirational" and thus not actionable).

In addition, the Complaint references statements that "Mr. Dorsey is best positioned to . . . identify key areas of risk for the company," and that and the Board "believes that" Mr. Botha is a "strong, independent and effective" outside director "with extensive experience in the financial technology industry[.]"  (Compl. ¶ 48.) These statements are not actionable as a matter of law.  *See, e.g.*, *Ikeda v. Baidu,*

*Inc.*, No. 20-cv-2768-LHK, 2021 WL 1299046, at *8-9 (N.D. Cal. Apr. 7, 2021) (dismissing complaint because Plaintiff "has not alleged specific facts that suggest that . . . [defendant] did not ***believe*** . . . that it was in compliance") (emphasis added); *Hun v. Hajjar*, No. 18-cv-10330 PSG (KSx), 2019 WL 4509302, at *8 (C.D. Cal. May 30, 2019) (dismissing negligent misrepresentation claim based on statement that Defendants "had extensive experience" where Plaintiff failed to explain "why Plaintiff believes that Defendants . . . did not have extensive experience"); *In re En Pointe Techs., Inc. Sec. Litig.*, No. 01-cv-0205-L(JAH), 2003 WL 27392762, at *8 (S.D. Cal. Aug. 25, 2003) (finding the "optimistic statement" that a company is "being positioned to compete well" not actionable).

### 2.     Plaintiff Does Not Adequately Allege a Material Omission

Aside from failing to allege any material misstatements, Plaintiff also does not allege any material omissions.  "Silence, absent a duty to disclose, is not misleading[.]"  *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024).  As such, the standard for pleading an actionable "omission" is particularly onerous: to support a claim under Section 14(a), "an omission must be misleading . . .  it must affirmatively create an impression of a state of affairs that differs in a ***material*** way from the one that actually exists."  *In re Sequenom, Inc. S'holder Litig.* ("*Sequenom*"), No. 16-cv-2054-JAH-DDL, 2023 WL 4833465, at *10 (S.D. Cal. July 27, 2023) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)) (emphasis added); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014) (same); *see also In re Textainer P'ship Sec. Litig.*, No. 05-cv-0969 MMC, 2005 WL 3801596, at *8 (N.D. Cal. Dec. 12, 2005) (applying *Brody* in the Section 14(a) context).  For an omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  It is simply not enough to allege

1   that a disclosure was "incomplete or does not include all relevant facts." *Brody*,

2   280 F.3d at 1006.  The federal securities laws do not contain a "freestanding

3   completeness requirement." *Id.*  Here, the Complaint does not adequately allege

4   any material omission.

5       At the heart of Plaintiff's Complaint is an improper and unjustified demand

6   for more disclosure: more about "what kind of reports the Audit & Risk Committee

7   receives," "what mitigation efforts Block has adopted," and "how many meetings

8   the Audit and Risk Committee had in 2023."  (Compl. ¶¶ 49-51.)  But the

9   Complaint never alleges that Defendants had any "duty to disclose" that

10  information, and so fails to state a claim.  *See Retail Wholesale & Dep't Store*

11  *Union Local 388 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir.

12  2017) ("An actionable omission claim arises only when disclosure is 'necessary . . .

13  to make the statements . . . not misleading.'") (quoting 17 C.F.R. § 240.10b–5(b))

14  (emphasis added); *Mehedi v. View, Inc.* ("*Mehedi II*"), No. 21-cv-6374-BLF, 2024

15  WL 3236706, at *12 (N.D. Cal. June 28, 2024) (company had "no duty to disclose"

16  details of its internal corporate policies); *see also In re PayPal Holdings, Inc.*

17  *S'holder Derivative Litig.* ("*PayPal*"), No. 17-cv-0162-RS, 2018 WL 466527, at *3

18  (N.D. Cal. Jan. 18, 2018) ("Federal securities laws do not impose upon companies a

19  'duty to disclose uncharged, unadjudicated wrongdoing.'") (citation omitted).

20      More specifically, the Complaint purports to identify two categories of

21  omissions: (1) "material deficiencies in the Company's internal controls over risks

22  plaguing Cash App," (Compl. ¶ 55) and (2) information about the departure of Mr.

23  Summers from the Board.  (Compl. ¶ 63.)  The Complaint fails to allege how either

24  of these alleged omissions could have altered the total mix of information that a

25  reasonable stockholder would have considered in deciding how to cast their proxy

26  vote at the annual stockholder meeting.

27      There were three proposals set for a vote at the annual stockholder meeting:

28  (1) the re-election of two directors who ran unopposed; (2) the approval of

executives' compensation on an advisory basis; and (3) the ratification of Ernst & Young LLP's appointment as Block's accounting firm for the 2024 fiscal year. (*See* Ex. 1 at 5.)  As this Court has already recognized, these were routine matters that did "not involve significant changes to Block's corporate governance[.]"  (ECF No. 18 at 7.)  More importantly, these alleged omissions are far removed from the topics of the vote.

To begin with, the two Board members subject to re-election were Randall Garutti and Mary Meeker.  (Ex. 1 at 6.)  Neither are alleged to have any connection to Mr. Summers's resignation, or to Cash App's purported compliance problems. Next, although the Complaint claims the 2024 Proxy fails to disclose internal control deficiencies related to Cash App, (Compl. ¶ 12), and attempts to connect these purported deficiencies to the Audit Committee, (*see id.* ¶¶ 48-51), neither Garutti nor Meeker are even members of the Audit Committee.  (Ex. 1 at 6.)  In a weak attempt to connect this alleged omission to the vote, the Complaint states, "[t]he Proxy also seeks re-election of Block's directors based on their alleged success in providing effective oversight of management and implementing effective internal controls to protect Block against its key enterprise risks."  (Compl. ¶ 16.) But Plaintiff does not identify a single statement in the Proxy that seeks re-election of Garutti and Meeker on that basis.  And the Complaint makes no attempt to connect the two remaining voting items—the ratification of the appointment of Ernst & Young and the compensation of executives—to Mr. Summers's resignation or the sufficiency of the Company's internal controls..

Moreover, the Complaint fails to allege how ***additional*** information about Mr. Summers's departure or "the Company's internal controls" would have altered the "total mix" of information available to stockholders.  "No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."  *Sequenom*, 2023 WL 4833465, at *10. Block's stockholders had access to a great deal of publicly available information

regarding the purported omissions—including Plaintiff's publicly filed lawsuit—and still chose to support the Board's proposals.  The Complaint cites numerous publicly available articles preceding the 2024 Proxy that discussed Mr. Summers's resignation and a governmental investigation into Block based on whistleblower allegations related to Cash App's internal controls.  (Compl. ¶¶ 57-62.)  "The Ninth Circuit and other courts have held that the securities laws do not require disclosure of information that is readily available in the public domain." *Ikeda*, 2021 WL 1299046, at *13.  It is "pointless and costly to compel firms to reprint information already in the public domain." *Rubke v. Capitol Bancorp Ltd*., 551 F.3d 1156, 1162-63 (9th Cir. 2009).  The public information in the Complaint was already well known to investors, and Block had no obligation to re-print that information in the 2024 Proxy, particularly when it had no bearing whatsoever on the vote at hand.[2]

**C.    Plaintiff Fails to Plead Particularized Facts Giving Rise to a "Strong Inference" of Negligence**

The Complaint should also be dismissed because Plaintiff fails to plead particularized "facts that give rise to a strong inference of negligence" as to each Defendant—a separate and independent element of Plaintiff's claim. *McKesson*, 126 F. Supp. 2d at 1267; *In re Verisign, Inc., Derivative Litig.* ("*Verisign*"), 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) (dismissing Section 14(a) claim due to failure to show "the required state of mind with particularity as to each defendant"); *see also Mehedi I*, 2023 WL 3592098, at *14 (Plaintiff must "adequately allege[] negligence with particularity for the Section 14 claim").  Under the PSLRA, the Complaint can survive "only if a reasonable person would deem the inference of

---

[2] Additionally, specific securities regulations set forth the required disclosures regarding director departures.  (*See* SEC Form 8-K, Item 5.02, available at sec.gov/about/forms/form8-k.pdf.)  The Complaint does not allege that Block failed to comply with these requirements.

1  [negligence] cogent and at least as compelling as any opposing inference[.]"

2  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).

3  Here, the Complaint is utterly void of any ***facts***—as opposed to legal

4  conclusions—that could support a finding that any Defendant was negligent in their

5  issuance of the 2024 Proxy.  "Plaintiffs cannot rely on group pleading" to establish

6  Defendants' culpability.  *Mendoza v. HF Foods Grp., Inc.*, No. 20-cv-2929-ODQ

7  (JPRx), 2021 WL 3772850, at *11 (C.D. Cal. Aug. 25, 2021) (dismissing Section

8  14(a) claims on this basis).  Nearly the entire Complaint is alleged against the

9  "Defendants" as an undifferentiated group, and no facts are alleged to show any

10  particular Defendant's negligence.  (*See, e.g.*, Compl. ¶76 ("Defendants negligently

11  issued, caused to be issued, and participated in the issuance of materially

12  misleading written statements to stockholders that were contained in the 2024

13  Proxy."), ¶ 36 (alleging the "'Individual Defendants' misrepresentations and

14  omissions").)  "These allegations are group pleading and are inadequate to state a

15  claim under the PSLRA."  *Mehedi II*, 2024 WL 3236706, at *15 (dismissing

16  Section 14(a) claims when complaint "allege[d] without differentiation that the

17  Defendants acted negligently").

18  Plaintiff does not allege that any Defendant ever actually failed to exercise

19  due care with respect to the 2024 Proxy.  Nor does Plaintiff plead any specific facts

20  that would support such a conclusion.  *See Verisign*, 531 F. Supp. 2d at 1206-07,

21  1213 (dismissing Section 14(a) claims for failure to specify with particularity

22  "fact[s] showing what each defendant knew, when he/she knew it, or how he/she

23  acquired that knowledge").

24  Moreover, the Complaint affirmatively pleads facts negating any inference of

25  negligence.  It points out, for example, that the "effectiveness of [Block's] internal

26  control over financial reporting . . . has been audited by Ernst & Young, LLP[.]"

27  (Compl. ¶¶ 10-11.)  The most compelling inference to be drawn from these facts is

28  that Defendants are acting properly, consistent with their duty of care, to address

compliance risks—not that they are being negligent. *See Tellabs*, 551 U.S. at 314.

The Complaint's negligence allegations are particularly deficient with respect to the Individual Defendants. "[C]onclusory labels or boilerplate references to corporate executive duties" do not establish negligence. *Mendoza*, 2021 WL 3772850, at *11. Accordingly, allegations that "Dorsey is responsible for Block's day-to-day operations," and that "the Audit Committee members are responsible for 'reviewing the adequacy and effectiveness of our disclosure controls,'" (*see* Compl. ¶¶ 25, 49), are insufficient to satisfy the PSLRA as a matter of law. *See, e.g.*, *In re JPMorgan Chase Derivative Litig.*, No. 13-cv-2414-KJM-EFB, 2014 WL 5430487, at *25 (E.D. Cal. Oct. 24, 2014) (dismissing Section 14(a) claims against director defendants because complaint did "not describe with sufficient detail what the directors knew or did not know or how they were negligent in failing to discover what they should have"); *City of Birmingham Relief & Ret. Sys. v. Hastings*, No. 18-cv-2107-BLF, 2019 WL 3815722, at *14 (N.D. Cal. Feb. 13, 2019) (dismissing Section 14(a) claim against "Audit Committee" defendants where the complaint did not "sufficiently allege" the specifics of "individual directors' duties").

Plaintiff offers even less than those deficient allegations for a majority of the Individual Defendants, who are neither officers nor members of the Audit and Risk Committee: Brooks, Carter, Meeker, McKelvey, Garutti, and Rothstein. (*See* Compl. ¶ 8.) The Complaint "pleads no specific facts that would tend to show culpable conduct of any sort" by those Individual Defendants. *McKesson*, 126 F. Supp. 2d at 1267; *see also In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-0870-BEN (RBB), 2005 WL 8158825, at *73 (S.D. Cal. Mar. 30, 2005) (dismissing Section 14(a) claims against director defendants where complaint "failed to describe with particularity actions that these Defendants could have taken to discover the . . . improprieties"). The Complaint should be dismissed for this reason as well.

1

### D.    Plaintiff Fails to Plead Loss Causation

2    A third independent ground for dismissing the Complaint is its failure to

3    plead loss causation with particularity.  The PSLRA requires Plaintiff to allege that

4    Defendants "caused the loss for which the plaintiff seeks to recover damages."  15

5    U.S.C. § 78u–4(b)(4).  This requires that a plaintiff prove both proximate causation

6    (i.e., that the allegedly misleading proxy statement was the essential link) ***and*** an

7    economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005);

8    *NYCERS*, 593 F.3d at 1023.  Section 14(a) plaintiffs must "connect[] the proxy

9    misstatements with an actual economic harm" and "provide notice of what the

10    relevant economic loss might be."  *NYCERS*, 593 F.3d at 1023-24.  The Complaint

11    fails to make this showing.

12    Plaintiff barely tries to allege loss causation.  The closest the Complaint

13    comes is the conclusory allegation that the allegedly misleading statements "are an

14    essential link in stockholders heeding Block's recommendation to re-elect the

15    current Board members up for election, approve the proposed executive

16    compensation, and renew the contract of [Ernst and Young]."  (Compl. ¶ 77.)  But

17    the Complaint never alleges that any of these actions will cause economic harm to

18    the Plaintiff.  That failure alone merits dismissal.  *See, e.g.*, *Krieger v. Atheros*

19    *Commc'ns, Inc.*, No. 11-cv-0640-LHK, 2012 WL 1933559, at *7 (N.D. Cal. May

20    29, 2012) (dismissing Section 14(a) allegations as legal conclusions failing to allege

21    "actual economic harm"); *Bailey v. Zendesk, Inc.*, No. 23-cv-1243-PCP, 2024 WL

22    1807943, at *6 (N.D. Cal. Apr. 24, 2024) (dismissing Section 14(a) claim based on

23    "dissemination of allegedly false projections" because plaintiff failed to establish

24    "that the true value of [the company] was in fact higher than the projections

25    estimated"); *see also Little Gem Life Scis. LLC v. Orphan Med., Inc.*, No. 06-cv-

26    1377 ADM/AJB, 2007 WL 541677, at *7 (D. Minn. Feb. 16, 2007) (no loss

27    causation in Section 14(a) case where the plaintiff merely alleged that "[h]ad the

28    individual defendants disclosed in the Proxy Statement the omission described in

1 [the complaint], the . . . stockholders would not have voted for or given their

2 proxies in favor of the merger").

3      Moreover, merely alleging that "the reelection of the directors was an

4 essential link to loss-generating corporate action because of the directors'

5 subsequent mismanagement cannot form the basis of liability under Section 14(a)."

6 *In re Diamond Foods, Inc. Derivative Litig*. ("*Diamond Foods*"), No. 11-cv-5692

7 WHA, 2012 WL 1945814, at *7 (N.D. Cal. May 29, 2012).  Courts have routinely

8 found these exact types of allegations insufficient to establish Section 14(a)'s

9 requisite "essential link."  *See, e.g.*, *PayPal*, 2018 WL 466527, at *4  (compiling

10 cases and finding that "A complaint alleging generally that the mere election of

11 directors was an essential link to the directors' subsequent wrongdoing does not

12 satisfy Section 14(a)'s requirements."); *In re HP Derivative Litig*., No. 10-cv-3608

13 EJD, 2012 WL 4468423, at *11 (N.D. Cal. Sept. 25, 2012) (similar).

14      The fact that Plaintiff only seeks injunctive relief does not permit her to

15 escape the requirement of showing economic loss.  Economic loss is an element of

16 Plaintiff's claim; without it, "no remedy, equitable or otherwise, is available."

17 *NYCERS*, 593 F.3d at 1024; *see also Hubner v. Mayer*, No. 15-cv-2965 MWF

18 (JEMx), 2015 WL 12513581, at *5 (C.D. Cal. June 8, 2015) (plaintiff who sought

19 "only injunctive relief," under Section 14(a), and "not damages or [other] equitable

20 relief," was required to allege loss causation and economic harm).

21      Plaintiff's failure to meet her burden on these elements, like her failure on

22 each of the other Section 14(a) elements, is an independent basis for dismissal.

23 **IV.   CONCLUSION**

24      For the reasons set forth above, Defendants respectfully request that the

25 Court dismiss Plaintiff's Complaint with prejudice.

26

27

28

1

Dated: July 19, 2024                    MORRISON & FOERSTER LLP

2

3                                           By: */s/ Christin Hill*

4                                               Christin Hill

                                            Attorney for Defendants
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28