1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10

11   JODY WATT,                          Case No.:  24cv867-LL-DDL
12                        Plaintiff,      **ORDER GRANTING MOTION TO
13   v.                                   DISMISS WITH LEAVE TO AMEND**
14   BLOCK, INC., et al.,                 **[ECF No. 38]**
15                        Defendants.
16
17

18          On May 16, 2024, Plaintiff Jody Watt filed a Complaint against Defendants Block,
19   Inc., Jack Dorsey, Roelof Botha, Sharon Rothstein, Mary Meeker, Randall Garutti, James
20   McKelvey, Shawn "Jay-Z" Carter, Amy Brooks, and Paul Deighton (hereinafter
21   "Defendants") under Section 14(a) of the Securities Exchange Act of 1934. ECF No. 1
22   ("Complaint" or "Compl."). On June 4, 2024, the Court denied Plaintiff's Motion for a
23   Preliminary Injunction[1], finding that Plaintiff had failed to show irreparable harm. ECF
24   
25   ─────────────────
26   [1] On May 23, 2024, Plaintiff filed a Motion for Preliminary Injunction to (1) make
27   additional disclosures in Defendant Block Inc.'s 2024 annual proxy statement regarding its
     internal controls relating to key enterprise risks, including risks related to Block's Cash
28   App and Square products and (2) postpone Block's 2024 annual shareholder meeting set

No. 18. Defendants now move to dismiss Plaintiff's Complaint. ECF No. 38 (hereinafter "Motion to Dismiss"). Plaintiff filed an Opposition and Defendants filed a Reply. ECF Nos. 41, 42. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend.

## I.    BACKGROUND

On May 16, 2024, Plaintiff filed a Complaint against Defendants for violation of section 14(a) of the Securities Exchange Act of 1934. Compl. Plaintiff Jody Watt is a current shareholder of Block, Inc. (hereinafter "Block") and brought an individual action against certain present and former directors of Block for declaratory and injunctive relief to remedy allegedly false statements and omissions in connection with the Company's 2024 Proxy Statement. *See* Compl. Block's 2024 Proxy Statement was filed with the SEC and disseminated with its Annual Report to shareholders, including Plaintiff, on April 26, 2024. *See* Compl. ¶ 2. The Proxy states that Block planned to hold its annual shareholder meeting on June 18, 2024. *Id.*

Plaintiff alleges that the 2024 Proxy Statement "touted the success and importance of the Company's Cash App product" which is "one of two primary business lines for Block." *Id.* ¶ 3. Plaintiff alleges that the "Proxy is false and misleading and contains material omissions" including that "it fails to disclose that there are in fact material deficiencies in the Company's internal controls over risks plaguing Cash App." *Id.* ¶ 12. Plaintiff further alleges that "the Proxy fails to disclose materials facts about the sudden and unexpected resignation of Director [Larry] Summers from the Board of Directors" on February 9, 2024. *Id.* ¶ 13.

Plaintiff further alleges that on February 16, 2024, "it was disclosed that multiple federal financial regulators [were] exploring allegations by two whistleblowers that Block lacked adequate internal controls to prevent Cash App from being used for unlawful

---

for June 18, 2024 to allow for the additional disclosures to be made and then reviewed by Block shareholders in advance of the annual shareholder meeting. ECF No. 4.

purposes, including but not limited to money laundering." *Id.* ¶ 14. Plaintiff alleges that Director Summers' role as a "financial expert' on Block's board and his role on the Audit and Risk Committee, together with the temporal proximity of his resignation and federal investigations into Cash App being used for unlawful purposes, indicate that Block "wanted to resign in an attempt to avoid liability and/or protect his reputation before the full extent of the problems became known." *Id.* ¶ 15. Plaintiff also alleges that Summers "had a material disagreement with Block's management over these issues" which "caused Summers to resign." *Id.* Plaintiff alleges that "any board resignations motivated by disagreements with management over internal controls or financial reporting must be disclosed by public companies." *Id.*

As a result of the conduct alleged in the Complaint, Plaintiff alleges that "Defendants are in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9." *Id.* ¶ 77. Plaintiff further alleges that as a direct and proximate result of Defendants' wrongful conduct, Block misled or deceived its stockholders by making misleading statements regarding Block's recommendation to re-elect the current Board members who were up for election, approve the proposed executive compensation, and renew the contract of the outside auditor. *Id*. Block ultimately held its annual stockholder meeting on June 18, 2024, and the stockholders approved all three proposals at the annual meeting. ECF No. 38-4. Plaintiff seeks "declaratory and injunctive relief, including a court order declaring the proxy to be false and misleading and ordering Defendants to issue a corrective proxy statement, invalidating the results of the 2024 annual meeting, and requiring Block to hold another meeting after dissemination of a corrective proxy." *Id.* ¶ 84.

## II.  LEGAL STANDARD

Section 14(a) of the Securities Exchange Act makes it unlawful to solicit shareholder approval by use of a proxy statement that does not comply with the rules and regulations of the Securities Exchange Commission. 15 U.S.C. § 78n. SEC Rule 14a-9 provides that proxy communications shall not contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

"To state a claim under Section 14(a) [of the Securities Exchange Act of 1934], a plaintiff must establish that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Knollenberg v. Harmonic, Inc.*, 152 Fed. Appx. 674, 682 (9th Cir. 2005). "An omitted fact [in a proxy statement] is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). When a plaintiff alleges an omission, the omission is only material if "a *reasonable* investor would have viewed the non[-]disclosed information as having *significantly* altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (emphasis in original).

Securities complaints that sound in fraud are examined under the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which "require [plaintiffs] to plead [their] case with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). Specifically, Rule 9(b), as modified by the PSLRA, demands that securities fraud plaintiffs identify: "(1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed." *Id.* at 1023; *see also* 15 U.S.C. § 78u-4. A statement is actionably false or misleading if it would give a reasonable investor "an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hospital Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Where a plaintiff's claims do not sound in fraud, the plaintiff need not meet the heightened pleading standard of Rule 9(b). *See, e.g., In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000).

Plaintiffs also bear the "burden of proving that the act or omission of the defendant … caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4. "To show loss causation, a plaintiff must prove both economic loss and proximate causation." *New York City Employees' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) (internal citations omitted). "In well pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *Id.*

## III.  ANALYSIS

### a.  Request for Judicial Notice

As an initial matter, Defendants request that the Court take judicial notice of the following four documents in support of its Motion to Dismiss: (1) a copy of Block's 2024 Proxy Statement, (2) a copy of Block's 2024 Annual Report; (3) a copy of Block's 2023 Proxy Statement, and (4) a copy of Block's June 2024 8-K Report. ECF No. 38-6.

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Plaintiff references the 2023 and 2024 Proxy Statements and the 2024 Annual Report in the Complaint, so the Court finds it appropriate to take judicial notice of those documents. *See U.S. v. Ritchie*, 342 F.3d at 908 ("A [district] court may … consider certain materials – documents attached to the complaint, document incorporated by reference in the complaint, or matters of judicial notice" in deciding a motion to dismiss."). The Court also takes judicial notice of the June 2024 8-K Report because it is an SEC filing that is frequently subject to judicial notice. *See, e.g., McManus v. McManus Fin. Consultants, Inc.*, 552 F.App'x 713, 714 (9th Cir. 2014) (taking judicial notice of contents in Form 8-K document filed with the SEC).

/ / /

### b. Pleading Standard and Summary of Parties' Arguments

Here, Plaintiff seeks to evade Rule 9(b)'s pleading standard for her claims of violation of Section 14(a) of the Exchange Act and declaratory and injunctive relief under 22 U.S.C. § 2201 and California Code of Civil Procedure § 1060 on the basis that she "asserts only negligence-based claims for equitable and injunctive relief." Oppo. at 11. Specifically, Plaintiff includes the following disclaimer language in her Complaint:

> ¶78.  Plaintiff thereby seeks injunctive and equitable relief because the conduct of the Individual Defendants is interfering with Plaintiff's voting rights and choices at the 2024 annual meeting. Plaintiff does not seek any monetary damages for the proxy law violations.

> ¶ 74.  Plaintiff incorporates by reference and re-alleges each allegation contained above, as though fully set forth herein, except to the extent those allegations plead knowing or reckless conduct by Defendants. This claim is based solely on negligence, not on any allegation of reckless or knowing conduct by or on behalf of Defendants. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to this claim.

Compl. ¶¶ 74, 78. Where a plaintiff disclaims reliance on fraud, courts may look to the allegations to determine whether the complaint still sounds in fraud. *See Desaigoudar*, 223 F.3d at 1022, n.5 (agreeing with district court's rejection of plaintiff's claim that its Section 14(a) claim sounded in negligence after "carefully reviewing the complaint's language," which alleged knowing and intentional misconduct). Here, Defendants contend that "Plaintiff's Complaint fails to meet even the most basic pleading requirements of the Federal Rules of Civil Procedure, let alone the heightened demands of the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), which governs Plaintiff's sole cause of action." Motion to Dismiss at 10. The Court agrees.

Defendants make three main arguments as to why Plaintiff's Complaint should be dismissed. First, Defendants argue that "the Complaint fails to allege that Defendants made any false or misleading statement." *Id.* In support thereof, Defendants state that "[t]he Complaint fails to even identify which specific statements Plaintiff seeks to challenge" and

24cv867-LL-DDL

the "handful of statements mentioned in the Complaint are either commitments to corporate policies or opinions regarding the Company's efforts, and as such, are not actionable as a matter of law." *Id.* Second, Defendants argue that "Plaintiff fails to plead particularized facts supporting a 'strong inference' of negligence on the part of any Defendant, an independent ground for dismissal." *Id.* at 11. In support thereof, Defendants state that "Plaintiff fails to plead any facts whatsoever concerning any of the Individual Defendants – many of whom are neither officers of Block nor members of its Audit and Risk Committee." *Id.* Third, Defendants argue that "Plaintiff fails to plead the required element of loss causation – that the alleged misstatements or omissions caused any economic loss to Plaintiff." *Id.* In support thereof, Defendants state that "Plaintiff does not even attempt to link a purported misstatement or omission in the 2024 Proxy to any purported economic damages, much less allege facts establishing any nonspeculative harm, as required under the PSLRA." *Id.*

In the Opposition, Plaintiff argues that she "has identified specific statements in the Proxy and the Annual Report that are false and misleading." Oppo. at 15. Plaintiff states that "[f]or example, the Complaint cites to Block's statement regarding the Board's recognition of its 'primary responsibility' over 'oversight of risk management.'" *Id.* (citing Compl. ¶¶ 9, 47. Plaintiff further states that "[t]he Complaint also cites to 'Management Report on Internal Control over Financial Reporting,' as well as the independent auditor's 'Opinion,' both of which confirmed 'Block…maintained, in all material respects, effective internal control over financial reporting as of December 31, 2023." Oppo. at 15. (citing Compl. ¶¶ 10-11). Plaintiff states that "the Complaint cites to the Proxy's representation that Block's compensation policies were designed and implemented with careful controls to promote risk management and mitigation." Oppo. at 15-16 (citing Compl. ¶¶ 9, 47). Plaintiff states that "the Complaint also cites to the Proxy's boasting of experience and expertise of Dorsey and Botha over risk management, and its downplaying of the reasons for and impact of Dr. Summers's sudden resignation from the Board." Oppo. at 16 (citing Compl. ¶¶ 48, 54). In sum, Plaintiff argues that "these statements from Block's Proxy and

Annual Report paint a false and misleading picture of adequate and efficient internal controls at Block." Oppo. at 16 (citing Compl. ¶¶ 9-11, 17-18, 47-48, 54). Plaintiff argues that "courts in the Ninth Circuit have consistently upheld Section 14(a) claims where, as here, a shareholder alleges particularized facts demonstrating that a company is facilitating unlawful conduct or lacks adequate internal controls, thus subjecting the company to substantial undisclosed risk." Oppo. at 16 (citing *In re Countrywide Fin. Corp. Derivate Litig.*, 554 F. Supp. 2d 1044, 1076-77 (C.D. Cal. 2008) and *In re Wells Fargo & Co. Shareholder Derivative Litigation*, 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017)).

In response to Defendants' arguments about loss causation, Plaintiff argues that loss causation does not apply in this case because Plaintiff seeks only equitable and injunctive relief (not monetary damages). Oppo. at 23. Plaintiff argues that notwithstanding this, she has satisfied the requirement of pleading loss causation by alleging that Block issued allegedly "false and misleading proxy statements and hence interfering with Plaintiff's right to vote, Defendants have diminished the value of Plaintiff's ownership of Block stock, causing an economic loss." Oppo. at 25.

### c. Loss Causation

The Court first addresses Plaintiff's failure to plead loss causation. Plaintiff attempts to evade the loss causation requirement by claiming that it does not apply in this case because only equitable and injunctive relief is sought. Oppo. at 23. Ninth Circuit law provides that "loss causation is required to maintain an action under Section 14(a) regardless of the relief sought." *Hubner v. Mayer*, 2015 WL 12513581, at *5 (C.D. Cal. June, 8, 2015). Specifically, "when bringing a direct claim under Section 14(a) of the Exchange Act, 'private plaintiffs have to allege loss causation.'" *New York City Employees' Ret. Sys*, 593 F.3d at 1023. Further, in "well-pleaded Section 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *Id.* In *New York City Employees' Retirement Systems*, the Ninth Circuit expressly stated that "without an allegation of economic loss, no remedy, equitable or otherwise, is available." *Id.* at 1024.

Plaintiff's reliance on *Calamore v. Juniper Networks Inc*., 364 Fed. Appx. 370 (9th Cir. 2010) is unavailing. Plaintiff argues that in *Calamore*, the plaintiff "sought only equitable relief and the opinion does not contain the words 'causation' or 'economic loss.'" Oppo. at 25 (citing *Calamore*, 364 Fed. Appx. at 371). This exact argument has already been rejected by other district courts in the Ninth Circuit. For example, in *Hubner v. Mayer*, the Court rejected Plaintiff's argument that loss causation is not required for a Section 14(a) suit seeking equitable relief. 2015 WL 12513581, *6. The *Hubner* court reasoned as follows:

> The conclusion Plaintiff seeks to draw from the Ninth Circuit's silence on loss causation in *Calamore* does not follow. That the court did not address loss causation in a short, unpublished opinion, does not amount to a Ninth Circuit holding that loss causation is not required for such a claim under the PSLRA. And it certainly does not overrule the clear statement in *NYCERS* on which *Calamore* partly relies.

*Id.* Here, Plaintiff alleges no economic harm, let alone any connection between the alleged proxy misstatements with the economic harm. Plaintiff's argument that her voting rights were allegedly interfered with thereby diminishing the value of Plaintiff's Block stock does not suffice to show economic loss. *See New York City Employees' Ret. Sys*, 593 F.3d at 1023. In sum, Plaintiff's argument that she is not required to plead loss causation because only equitable and injunctive relief is sought fails because it is contrary to Ninth Circuit precedent. *Id.*

### d. False or Misleading Statements and/or Omissions

Plaintiff argues that she has sufficiently alleged false or misleading statements in the Complaint (Compl. ¶¶ 9, 47, 10-11, 48, 54) to support her argument that "these statements from Block's Proxy and Annual Report paint a false and misleading picture of adequate and efficient internal controls at Block." Oppo. at 16. For example, Plaintiff argues that "the Complaint cites to Block's statement regarding the Board's recognition of its 'primary responsibility' over 'oversight of risk management.'" *Id.* (citing Compl. ¶¶ 9, 47). Plaintiff further states that "[t]he Complaint also cites to 'Management Report on Internal Control

over Financial Reporting,' as well as the independent auditor's 'Opinion,' both of which confirmed 'Block…maintained, in all material respects, effective internal control over financial reporting as of December 31, 2023." Oppo. at 15. (citing Compl. ¶¶ 10-11). However, Plaintiff does not provide any particularized reason why these statements are misleading or false. *See* 15 U.S.C. § 78u-4. Rather, Plaintiff provides vague and conclusory allegations that these statements "paint a false and misleading picture of adequate internal controls at Block." Oppo. at 16. This is insufficient.

Plaintiff argues that "the Complaint also cites to the Proxy's boasting of experience and expertise of Dorsey and Botha over risk management, and its downplaying of the reasons for and impact of Dr. Summers's sudden resignation from the Board." Oppo. at 16 (citing Compl. ¶¶ 48, 54). However, neither the Complaint nor the Opposition explain how any statement was false or misleading in connection with or resulting from Dr. Summers's resignation from the Board. In sum, Plaintiff has failed to allege particularized facts to show that any of the statements in Plaintiff's Complaint are materially false or misleading. In other words, Plaintiff presents no factual allegations suggesting that any of the statements in the Proxy Statement are untrue.

Plaintiff relies on *In re Countrywide Financial Corp. Derivative Litigation*, 554 F. Supp. 2d at 1063-64, for the proposition that in that case, Plaintiff stated an actionable Section 14(a) claim by alleging "that the proxy statements failed to disclose that [the company] abandoned its underwriting standards, thus exposing itself to an undisclosed level of heightened risk." Oppo. at 17. However, in *Countrywide*, the plaintiff identified "red flags of such prominence that Individual Defendants [board committee members responsible with overseeing the corporation's risk exposures, investment portfolio, and loan loss reserves] must necessarily have examined and considered them in the course of their Committee Oversight duties." *Id.* at 1060. In *Countrywide*, one of the "red flags" involved "increasing delinquencies in Countrywide's riskiest loans," which "implicated underwriting practices at the core of Countrywide's business model," and the court concluded that the plaintiffs pleaded sufficient facts to infer scienter. *See id*. at 1060, 1064-

65. Specifically, in *Countrywide*, the plaintiffs alleged that Countrywide omitted from its proxy statements in three different years "the material fact that Individual Defendants…[were] making undisclosed fundamental changes to the Company's business model that relied on riskier products…in order to inflate its stock price and drive its short-term performance. *Id.* at 1075. The plaintiffs "argue[d] that if shareholders had been told the truth about the Company, they never would have voted (1) to reelect the current directors in those three years; or (2) to approve two compensation plans for executives and directors…." *Id.* Plaintiff also relies on *In re Wells Fargo & Co. Shareholder Derivative Litig.*, which involved a company's failure to disclose "a fraudulent business practice that put the company at material risk." 282 F. Supp. 3d at 1103.

The allegations in Plaintiff's Complaint are nothing like those in *Countrywide* or *In re Wells Fargo & Co.* Plaintiff argues in the Opposition that "[g]iven Summers' important role as 'financial expert' on Block's Audit and Risk Committee, his sudden, unexpected resignation from the Board calls for additional disclosures by Block regarding any connection between its internal-control deficiencies and Dr. Summers' resignation." Oppo. at 15 (citing Compl. ¶¶ 9, 47, 10-11, 17-18, 48, 54). Plaintiff further argues that, like in *Wells Fargo*, "Plaintiff alleges that the Proxy fails to disclose that Block lacks internal controls over Cash App since it has no procedure to establish the identity of its customers, causing Cash App to facilitate transactions with entities under sanction by the Treasury Department's Office of Foreign Assets Control, subjecting Block to regulatory investigation." Oppo. at 17 (citing Compl. ¶¶ 55, 63, 69). Plaintiff's arguments are unavailing for a few reasons. First, the Exchange Act does not "obligate corporate officials to present…every conceivable argument against their own recommendations." *Desaigoudar*, 223 F.3d at 1024. It requires only "that officials divulge all known material facts so that shareholders can make informed choices." *Id.*; *see also Brody v. Transitional Hosps. Corp.*, 280 F.3d at 1006 ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). Second, "[t]o be actionable under securities laws, an omission must be

misleading…it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists. *Police Ret. Sys. Of St. Louis v. Intuitive Surgical, Inc*., 759 F. 3d 1051, 1061 (9th Cir. 2014). Here, even if Plaintiff had adequately identified what information was allegedly omitted from the Proxy Statement, Plaintiff has not adequately explained why it creates an impression of a state of affairs that differs materially from the one that actually exists. Thus, Plaintiff has failed to establish that Defendants made any false or misleading statement or omission.

### e. Group Pleading

Finally, Defendants argue that the "entire Complaint is alleged against the Defendants as an undifferentiated group, and no facts are alleged to show any particular Defendants' negligence." Motion to Dismiss at 12-13. Plaintiff argues that she "satisfies that pleading requirement because [she] alleges that Defendants participated in issuing the 2024 Proxy." Oppo. at 23 (internal citations omitted). This is insufficient even under Federal Rule of Civil Procedure 8 because it deprives each Defendant from knowing what it, specifically, did wrong. The Court agrees with Defendants that Plaintiff must address her claims as to each Defendant individually instead of against all of the Defendants together. *See, e.g., Mehedi v. View, Inc*., 2024 WL 3236706, *15 (N.D. Cal. June 28, 2024).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.    CONCLUSION**

The deficiencies identified above are fatal to Plaintiff's claim. The Court finds that, as written, Plaintiff's allegations are implausible and insufficiently detailed. Accordingly, Defendants' Motion is **GRANTED WITH LEAVE TO AMEND.** Plaintiff may file a Second Amended Complaint ("SAC") which addresses the deficiencies noted in this order by **December 4, 2024**. If the SAC is not filed by December 4, 2024, the Clerk of Court shall **CLOSE** the case without further court order.

Dated:  November 20, 2024

_____
Honorable Linda Lopez
United States District Judge

24cv867-LL-DDL